# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

CRISTIAN GABRIEL DURAN
AVALOS,

              Petitioner,

vs.

PAMELA BONDI, et al.,

              Respondents.

No.  C25-4063-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I.    INTRODUCTION

This case is before me on petitioner Cristian Gabriel Duran Avalos' petition (Doc. 1) for habeas corpus under 28 U.S.C. § 2241 and motion (Doc. 4) for a temporary restraining order (TRO).  Duran Avalos is facing removal proceedings as an acknowledged citizen of El Salvador who allegedly entered the United States unlawfully around 2013.  Doc. 1 at ¶ 32.  He is currently detained at the Woodbury County Jail in Sioux City, Iowa, and an Immigration Judge (IJ) has classified him as being ineligible for bond.  Doc. 1 at ¶ 35.

Duran Avalos challenges his bond ineligibility classification as a Fifth Amendment violation and violation of federal laws and regulations.  On initial review, I entered an order (Doc. 6) directing respondents (collectively, the Government)[1] to respond to Duran Avalos' petition, which it did (Doc. 11).  Duran Avalos has filed a reply (Doc. 14).  Oral argument is not necessary.  *See* Local Rule 7(c).

---

[1] Although the Government's reply was filed on behalf of only the federal respondents, and not Chad Sheehan, the Woodbury County Sheriff (Doc. 11 at 3 n.1), this order will apply to all respondents.

## II.    BACKGROUND

Duran Avalos admits to being a citizen of El Salvador who has been in the United States since 2013. Doc. 1 at ¶¶ 31-32. Department of Homeland Security (DHS) officials encountered him at the Minnehaha, South Dakota County Jail, after he was arrested on charges of burglary, stalking, simple domestic assault, false imprisonment, interference with emergency communication and intentional damage to property, which have since been dismissed. Doc. 11 at 4. On October 24, 2025, DHS served Duran Avalos a Notice to Appear in removal proceedings and took him into custody. He is currently detained at the Woodbury County Jail in Sioux City, Iowa. *Id.*

On November 6, 2025, Duran Avalos appeared before an immigration judge (IJ). The Government notes that he did not request a bond redetermination hearing[2] and because he has never been inspected or admitted pursuant to 8 U.S.C. § 1225, DHS has not set a bond. *Id.* His next immigration hearing is scheduled for December 30, 2025. *Id.*

## III.    ANALYSIS

### A.    *Statutory and Regulatory Framework*

This court, and many others, have already explained the underlying statutory framework governing this matter. *See, e.g.*, *Giron Reyes v. Lyons*, ___ F. Supp. 3d ___, No. 25-cv-4048, 2025 WL 2712427, at *1–2 (N.D. Iowa Sept. 23, 2025); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *3–4 (E.D. Mich. Nov. 7, 2025). Under 8 U.S.C. § 1225(b)(2), an "applicant for admission"[3] who is "seeking admission" must be detained pending removal proceedings without bond. *See*

---

[2] Duran Avalos alleges that he sought his release in a bond hearing to no avail and that the immigration court denied bond because it believes he is not eligible for a bond redetermination hearing. Doc. 1 at ¶¶ 29, 30.

[3] Defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

2

*Jennings v. Rodriguez*, 583 U.S. 281, 287–88. By contrast, aliens detained under 8 U.S.C. § 1226(a) are given an individualized bond assessment. *Id.* at 288.

Most courts that have addressed the scope of § 1225(b)(2) have separated from its text "applicants for admission" and those "seeking admission." *See, e.g.*, *Ramirez Valverde v. Olson*, No. 25-cv-1502, 2025 WL 3022700, at *2–3 (E.D. Wis. Oct. 29, 2025); *Romero Perez v. Francis*, No. 25-cv-8112, 2025 WL 3110459, at *2 (S.D.N.Y. Nov. 6, 2025). In doing so, they have construed the present tense "seeking admission" to limit the section to applicants for admission attempting to enter, or having recently entered, the United States. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").[4] As one court has explained:

> For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez v. Francis*, ___ F. Supp. 3d ___, No. 25-cv-5937, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025).

The Government argues this majority view is wrong. It instead insists that all aliens are "seeking admission" until they have been formally admitted into the United States, regardless of how long they have resided in the country. Doc. 11 at 13. Consequently, "applicants for admission" must always be "seeking admission," effectively making the terms synonymous.

---

[4] Just as someone who "is charged with" a crime (present tense) no longer bears that status after their charges are resolved. *See Helbrum v. Williams*, No. 25-cv-349, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025) (interpreting 8 U.S.C. 1226(c)(1)(E)).

At least one court has adopted the Government's interpretation. *See Cirrus Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025).[5] To the Government's credit, had Congress wanted to be clearer about the limits on § 1225(b)(2), it could have used "arriving" as it had in another provision of the statute.[6] *See* 8 U.S.C. § 1225(b)(1)(A). But I am left to construe the statute as it is written, even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). In doing so, I cannot defer to the agency's interpretation when a better reading exists. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Here, giving effect to every word in the section, as is "one of the most basic interpretive canons," I must reject reading in the superfluousness that the Government requests. *Corley v. United States*, 556 U.S. 303, 314 (2009).

Context matters as well. *See Pulsifer v. United States*, 601 U.S. 124, 133 (2024). And the context surrounding § 1225(b)(2) further supports the term "seeking admission" limits the section's scope. The classes of people exempted from § 1225(b)(2) are all subcategories of arriving aliens, such as "crewm[e]n" and "stowaway[s]." 8 U.S.C. § 1225(b)(2)(B). Throughout § 1225 are repeated references to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (establishing screening for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any

---

[5] I am aware of three other courts finding in the Government's favor under these circumstances. However, those courts focused on whether the petitioners were "applicants for admission" without considering whether they were also "seeking admission." *See Chavez v. Noem*, ___ F. Supp. 3d ___, No. 25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, ___ F. Supp. 3d ___, No. 25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Barrios Sandoval v. Acuna*, 25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025).

[6] Just as it could have left out the present tense verb apparently confounding so many district courts. *See, e.g.*, *Romero Lopez v. Noem*, No. 25-cv-16890, 2025 WL 3101889, at *3 (D.N.J. Nov. 5, 2025) (collecting cases).

4

vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). Its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

Even § 1225(b)(1)(A)(iii)(II), a subsection giving the Attorney General discretion to expand the group of aliens subject to summary removal proceedings who have not been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," is not so clear-cut as the Government suggests. While the Government uses the provision to show how § 1225 is sometimes applicable to a term of years, it equally shows built-in limits to the statute's scope based on how long an alien has been in the United States. All this to say that the theme of 8 U.S.C. § 1225 is the timing of when an alien arrived in the country. And as I understand the Government's interpretation, it asks me to pluck out one subsection from the statute to say that only § 1225(b)(2) is unmoored to that theme.

The interplay between § 1225 and § 1226 is another context clue cutting against the Government's interpretation. For one, it is not absurd—one might even call it intuitive—for Congress to assign different risk factors to recently arrived aliens and those who have been in the country for years, allowing the latter group a chance at bond. This interpretation is bolstered by the recent Laken Riley Act amendment. Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). In that amendment, Congress expanded the class of non-bondable aliens under § 1226(c) to include unadmitted aliens charged with, arrested for, convicted of or having admitted to having committed certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). If all unadmitted aliens are already subject to mandatory detention under § 1225(b)(2), this aspect of the Laken Riley Act amendment would be superfluous.

To be clear, I am ruling solely on whether § 1225(b)(2) applies to Duran Avalos, not whether § 1225(b)(2) and § 1226(a) overlap, or which section is better suited for his circumstances. I find that Duran Avalos, having been in the United States for 12 years

5

at this point, does not meet the criteria to fall under § 1225(b)(2). Instead, he falls squarely within the scope of § 1226(a).

## B.    Constitutional Challenge

Having rejected the Government's justification for continuing to detain Duran Avalos, there remains a question of whether his continued detention demands habeas corpus relief.[7] Such relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petitioner bears the burden to prove by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

Duran Avalos alleges that his continued detention violates the Immigration and Nationality Act (INA), his due process rights under the Fifth Amendment of the United States Constitution, various immigration regulations and the Administrative Procedure Act (APA). Doc. 1. He seeks an order restraining the Government from attempting to move him from the State of Iowa during the pendency of his Petition and requiring 72-hour notice prior to any intended movement; immediate release or alternatively, a bond hearing consistent with § 1226(a); declaratory judgments and reasonable attorney fees and costs.

---

[7] While Duran Avalos requests a TRO, his requested relief is the same in his petition for habeas corpus under § 2241. Because the parties have briefed the merits of Duran Avalos' request for habeas relief, I will skip any discussion of interim relief and resolve the merits of Duran Avalos' petition. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *10 (W.D. Mich. Oct. 17, 2025) (granting habeas corpus petition and denying requested interim relief as moot); *Sanchez Ballestros v. Noem*, No. 25-cv-594, 2025 WL 2880831, at *1 (W.D. Ky. Oct. 9, 2025) (same). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petitioner bears the burden to prove by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

I will begin with Duran Avalos' due process claim, as I find it dispositive to the issue. The Due Process Clause extends to all persons in the United States regardless of citizenship status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Its substantive aspect looks at the Government's rationale to test whether it had a compelling reason to deprive an individual of a fundamental right. *Reno v. Flores*, 507 U.S. 292, 303 (1993). "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Thus, detention violates an individual's liberty interest "unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (emphasis in original; citations and quotation marks omitted). Although alleged illegal aliens may be detained pending removal proceedings, *Demore v. Kim*, 538 U.S. 510, 531 (2003), that alone does not constitute a special justification for continued detention, even when an alien is found to be removable, *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).

On this record, and as applied to Duran Avalos, I find that his continued detention without the opportunity to post bond violates his substantive due process rights. It is true that detention may be necessary to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity." *Jennings*, 583 U.S. at 286. But here, immigration officials denied Duran Avalos a bond hearing, designating him as ineligible for bond based on a misapplication of § 1225(b)(2). The record before me does not establish any special justification for Duran Avalos' continued detention. Thus, his right to substantive due process is being violated and this violation is properly remedied by a writ of habeas corpus.

7

## IV.    CONCLUSION

For the reasons set forth herein:

1.    Cristian Gabriel Duran Avalos' petition (Doc. 1) for a writ of habeas corpus is **granted**.    Within **fourteen (14) days** from the date of this order, respondents are **directed** to either (1) immediately release Duran Avalos or (2) hold a bond determination hearing in which Duran Avalos is not deemed ineligible for bond under 8 U.S.C. § 1225(b)(2).

2.    The motion (Doc. 4) for a temporary restraining order is **denied as moot**.

3.    Judgment shall enter in favor of Petitioner Cristian Gabriel Duran Avalos and against Respondents Pamela Bondi, Kristi Noem, Todd Lyons, David Easterwood, Woodbury County Jail and Chad Sheehan.

**IT IS SO ORDERED** this 9th day of December, 2025.

_____
Leonard T. Strand
United States District Judge

8